```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


NATS, INC., SYED MASWOOD,         :
                                  :
     Plaintiffs,                  :
                                  :
V.                                :    CASE NO. 3:04-CV-559 (RNC)
                                  :
U.S. AGENCY FOR INTERNATIONAL     :
DEVELOPMENT, UNITED STATES OF     :
AMERICA, INTERNATIONAL            :
EXECUTIVE SERVICES CORP.,         :
GLOBAL TRADE & TECHNOLOGY         :
NETWORK, RYM BEDOUI, EDWARD       :
O'BRIEN,                          :
                                  :
     Defendants.                  :
```

RULING AND ORDER

Plaintiffs bring this fraud action against the United States, the U.S. Agency for International Development (USAID), the Global Trade and Technology Network (GTTN), the International Executive Services Corp. (IESC), and two individuals. A motion has been filed to set aside a default judgment against GTTN and dismiss the action against GTTN and IESC (Doc. #27). In addition, a motion to dismiss has been filed by the United States and USAID (Doc. #33). For reasons that follow, both motions are granted and the action is dismissed.[1]

---

[1] In October 2004, the plaintiffs were ordered to show why the action should not be dismissed against the two individual defendants for failure to make proof of service. (Doc. #16.) No such showing has been made. Accordingly, the action is dismissed against those defendants as well.

1

I.  <u>Facts</u>

The complaint alleges the following relevant facts. Plaintiff Syed Maswood is the president of NATS, Inc., which exports scientific equipment. (Compl. ¶¶ 3-4.) In 2001, he was invited to join a commercial delegation to Tunisia. (Compl. ¶¶ 24-26.) While there, he met Rym Bedoui, who purported to be a USAID employee working with GTTN and IESC, divisions of USAID. (Compl. ¶¶ 28-29.) In her official capacity, Bedoui offered to help the plaintiff establish a business relationship with a Tunisian businessman who needed capital and scientific equipment for a hospital project. (Compl. ¶¶ 32-45.) Bedoui pressured the plaintiff to make a cash investment of $500,000 and to give the Tunisian businessman distribution rights. (Compl. ¶¶ 48-58.) After confirming the arrangement with Edward O'Brien, an employee of the Department of Commerce, plaintiff signed a contract. (Compl. ¶¶ 64-66.) Bedoui then demanded a fee of $10,000. (Compl. ¶ 70.) As a result of defendants' misrepresentations, plaintiff suffered damages in excess of $2 million. (Compl. ¶ 88.)

In April 2004, plaintiffs filed this suit against the United States, USAID, GTTN, IESC, O'Brien and Bedoui, alleging fraud, conspiracy to defraud, a pattern of conduct designed to defraud, and failure to control. In July 2004, a default was entered against GTTN, which had not appeared. (Doc. #10.) This was followed by entry of a default judgment against GTTN in November 2004. (Docs. #19, #20.)

II.  Discussion

    Motion To Set Aside Default Judgment

The United States, USAID, and IESC move to set aside the default judgment against GTTN pursuant to Fed. R. Civ. P. 60(b)(1) and (6).  They contend that the judgment should not have been entered because GTTN is not a legal entity and was never served with process.

Rule 60(b)(1) permits a court to relieve a defendant of a default judgment on a showing of "excusable neglect."  The factors to be considered are whether the default was willful, whether the defendant has a meritorious defense, and whether setting aside the default would prejudice the plaintiff.  Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996).

Of these three factors, the second and third favor setting aside the default judgment.  USAID and GTTN have meritorious defenses based on lack of jurisdiction under the Federal Tort Claims Act (FTCA) and lack of service of process, respectively.  Moreover, although the plaintiffs have been put to the trouble of preparing for a hearing on damages, setting aside the default judgment will not prejudice them in a way that warrants denying the motion.  See, e.g., Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001) ("Attempting to execute the default judgment . . . does not establish that [plaintiffs] would be prejudiced now by our decision to vacate the default judgment . . . .").

The first factor presents a closer question.  USAID states that it saw no need to take steps to prevent a default judgment from entering against GTTN because GTTN is not a legal entity, but rather a former USAID-sponsored program.  Whether this constitutes excusable neglect is somewhat uncertain.  However, in view of the strong policy favoring dispositions on the merits, see New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005), I resolve this issue in favor of the defendants.[2]

Motion to Dismiss As To GTNN

The United States, USAID and IESC move to dismiss the action against GTNN pursuant to Rule 12(b)(4) and (5) on the ground that GTNN was not served with process.  Ordinarily, a process server's return is prima facie proof of service of process.  See Knipple v. Viking Commc'ns, Ltd., 236 Conn. 602, 607 n.9 (1996); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353, at 343 (3d ed. 2004).  However, a court may consider a defendant's uncontroverted affidavits in deciding whether process was served.  5B Wright & Miller, supra, § 1353, at 343-44.

In this case, the process server certified that he served GTTN by delivering a summons to Michael L. Starr of 2 Emmons Drive, Princeton, New Jersey.  (Doc. #5.)  Defendants deny that

---

[2] Given that all parties now acknowledge that GTTN was part of USAID, setting aside the default judgment is also consistent with Rule 55(e), which prohibits entry of a default judgment against the United States "unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." Fed. R. Civ. P. 55(e).

4

any such service was made.  They aver that GTTN has never been located at this address (Halleran Aff. ¶ 11), and that Starr has never heard of GTTN (McGrath Aff. ¶ 4).  Plaintiffs do not contest these averments.

On this record, defendants' uncontroverted averments must be accepted as true.  Accordingly, the motion to dismiss the action against GTTN is granted.[3]

Motion to Dismiss As To IESC

A motion to dismiss for lack of service of process has also been made by IESC. On October 25, 2004, plaintiffs were ordered to show why the action should not dismissed as to IESC for failure to make proof of service. (Doc. #16.)  No such showing has been made.  Accordingly, the motion to dismiss the action against IESC is also granted.

Motion to Dismiss As To The United States And USAID

The complaint alleges that the United States and USAID are liable for the plaintiffs' damages because they failed to exercise reasonable control over Bedoui, an alleged employee. This claim can be brought, if at all, only pursuant to the FTCA, which waives the federal government's sovereign immunity with regard to injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within

---

[3] Plaintiffs' failure to serve GTTN provides another ground for setting aside the default judgment because failure to serve a defendant renders a default judgment void, regardless of the willfulness of the default.  See Sartor v. Toussaint, 70 Fed. Appx. 11, 13 (2d Cir. 2002).

the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The United States and USAID move to dismiss this claim pursuant to Rule 12(b)(1) and (6) contending that the plaintiffs failed to exhaust administrative remedies before bringing the action.  In addition, they contend that the action is barred by the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h).[4]

Exhaustion of Remedies

The FTCA requires a plaintiff to exhaust administrative remedies before filing suit.  See 28 U.S.C. § 2675(a). Implementing regulations require a plaintiff to file with the appropriate agency "written notification of an incident, accompanied by a claim for money damages in a sum certain for injury . . . alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a); see also Adams v. U.S. Dep't of Hous. & Urban Dev., 807 F.2d 318, 320 (2d Cir. 1986); Wilds v. U.S. Postmaster Gen., 989 F. Supp. 178, 187 (D. Conn. 1997).  The defendants contend that the plaintiffs failed to file such a notice.

In plaintiffs' response to the motion to dismiss, they claim to have presented two complaints to USAID.  (Doc. #46 at 7-8.) They state that the first one, allegedly sent on August 21, 2001,

---

[4] Defendants also argue that plaintiffs' claim should be dismissed under the foreign tort exception to the FTCA, 28 U.S.C. § 2680(k), which precludes liability for "claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred."  Sosa v. Alvarez-Machain, 542 U.S. 692, 712 (2004).  This argument is unavailing because it is unclear whether plaintiffs suffered their injury in Tunisia or Connecticut.

"set[] forth the facts that gave rise to their claims against USAID and put USAID on notice about the size of the claim for damages."  (Id. at 2-3.)  A copy of this complaint has not been produced.  The second complaint, a copy of which has been produced, in no way presented a claim for damages.  It merely urged USAID "to purge [itself] of corrupt elements" and did not state that plaintiffs were seeking damages, let alone a sum certain.  (Id. exh. A.)

In view of plaintiffs' failure to produce the first complaint, and the clear inadequacy of the second complaint, it is difficult to avoid the conclusion that plaintiffs failed to exhaust their administrative remedies.  Even assuming that they did comply with this requirement, however, their claim against the federal defendants must be dismissed because it is barred by the intentional tort exception to the FTCA.

### Intentional Tort Exception

Under the intentional tort exception, the government is not liable for damages "arising out of" an employee's intentional torts, including misrepresentation or deceit.  Plaintiffs' negligent control claim manifestly "arises out of" misrepresentation.  Accordingly, the claim is barred.

A claimant may not evade this exception by alleging that the government negligently failed to control the tortfeasor.  See, e.g., Guccione v. United States, 847 F.2d 1031, 1033-34 (2d Cir. 1988); LaFrancis v. United States, 66 F. Supp. 2d 335, 337-39 (D. Conn. 1999).  "Negligent supervision" claims are deemed to be

claims "arising out of" the intentional tort and, as such, cannot support government liability. Guccione, 847 F.2d at 1034 (quoting United States v. Shearer, 473 U.S. 52, 55 (1985) (plurality opinion)).

The government may be liable for negligent control in limited circumstances. When the tortfeasor is not an employee "acting within the scope of his office" and the government has an independent duty to protect the plaintiff from the tortfeasor, the FTCA permits a claim of negligent control. See Sheridan v. United States, 487 U.S. 392, 400-03 (1988); Guccione, 847 F.2d at 1035 ("[W]here the intentional tortfeasor is *in no sense* carrying out the Government's business, the claim against the United States for negligent supervision of the assailant does not 'arise out of' an intentional tort within the meaning of section 2680(h)."). In this case, though, "the gravamen of [plaintiffs'] complaint is that the Government failed to exercise adequate control over [Bedoui] . . . while acting in some capacity on the Government's behalf." Guccione, 847 F.2d at 1037. Moreover, plaintiffs have not alleged that the government owed a duty to them independent of Bedoui's alleged employment relationship.

A related exception, known as the "independent affirmative duty" doctrine, permits the government to be held liable for its employees' intentional torts when it assumes a special duty of care. See id.; LaFrancis, 66 F. Supp. 2d at 339. This doctrine is invoked when the government assumes custody of an individual, for example, in a hospital, day care center, or school. See

8

LaFrancis, 66 F. Supp. 2d at 339-41 (citing cases). The government owed no such special duty of care to the plaintiffs. Accordingly, the motion to dismiss the action against the federal defendants is granted.[5]

III. Conclusion

For the foregoing reasons, the pending motions (Docs. #27, #33) are hereby granted. Judgment will enter in favor of the defendants dismissing the complaint.

So ordered.

Dated at Hartford, Connecticut this 13th day of January 2006.

```
            _____/s/_____
                  Robert N. Chatigny
                United States District Judge
```

---

[5] Plaintiffs contend that dismissal of their FTCA claim will deprive them of property without due process under the Fifth and Fourteenth Amendments, and they request leave to amend their complaint to assert such a claim. Granting leave to amend would be futile because plaintiffs' due process theory overlooks other remedies that might have been available to them had they served other defendants. See Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir. 1999).